# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FLORIDA GAS TRANSMISSION
COMPANY, LLC,

    Plaintiff,

vs.

+/- 0.427 ACRES OF LAND IN PUTNAM
COUNTY, FLORIDA, UNKNOWN HEIRS
AND BENEFICIARIES OF THE ESTATE OF
WILLIE SCOTT, ROSA LEE SMOKE a/k/a
ROSA SCOTT-SMOKE, UNKNOWN
OWNERS, IF ANY,

    Defendants.
_____/

Case No.
3:21-cv-00250-MMH-MCR

Tract Nos:
FLMED-PUTN-007.00

## **ORDER**

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 4) and Motion for Preliminary Injunction for Immediate Possession (Doc. 5). As it pertains to Defendants, UNKNOWN HEIRS AND BENEFICIARIES OF THE ESTATE OF WILLIE SCOTT and UNKNOWN OWNERS, IF ANY (collectively, the "Defendants"), for the reasons discussed herein, the Court grants both Motions as to these Defendants.

**I. Background**

On March 19, 2020, the Federal Energy Regulatory Commission ("FERC") issued an order which, among other things, granted Plaintiff, Florida

Gas Transmission Company, LLC ("FGT") a Certificate of Public Convenience and Necessity ("FERC Certificate") under the Natural Gas Act ("NGA"), 15 U.S.C. § 717f. The FERC Certificate authorizes FGT to construct and operate the Putnam Expansion Project ("Project"), which is an interstate natural gas pipeline. FGT filed this condemnation action against these Defendants and others to acquire the Subject Easements necessary to complete the Project.

On March 25, 2021, April 1, 2021, and April 8, 2021, FGT effectuated service by publication on Defendants, Unknown Heirs and Beneficiaries of the Estate of Willie Scott and Unknown Owners, if any, pursuant to Rule 71.1(d)(3)(B), Federal Rules of Civil Procedure ("Rule(s)"). (Doc. 19).

To date, Defendants Unknown Heirs and Beneficiaries of the Estate of Willie Scott and Unknown Owners, if any, have not responded to the Complaint or the Motions, nor did they appear at the hearing on the Motions held by this Court on June 2, 2021, despite due notice.

Having reviewed the record, the Court makes the following findings of fact and conclusions of law:

## II. **Partial Summary Judgment – Federal Power to Condemn**

### A. **Findings of Fact**

1. FGT requests that this Court enter an order of partial summary judgment establishing FGT's right to condemn the Subject Easements.

2. On March 19, 2020, FERC issued an Order granting FGT a

FERC Certificate that authorizes FGT to construct and operate the Project (Doc. 1-5; Doc. 6, ¶ 9; Doc. 6-2; Doc. 7, ¶ 9; Doc. 7-2).

3. To construct and operate the Project in accordance with the FERC Certificate, FGT must acquire the Subject Easements described in Exhibit 2 to the Complaint (Doc. 1-3), and attached as Exhibit A to this Order, which are located within the jurisdiction of this Court.

4. As part of the certification process, FGT submitted, and FERC approved, "alignment sheets" showing the final alignment of the Project and that the Subject Easements are necessary for the construction of the Putnam Expansion Project.

5. FGT prepared the Subject Easements, a copy of which is attached to this Order and to Exhibit 2 to the Complaint, to conform with the FERC-approved alignment sheets. (Doc. 1-3 & Doc. 8, ¶ 10).

6. FGT has communicated with known owners and made offers in an attempt to purchase the Subject Easements. (Doc. 8, ¶ 11).

7. FGT was unable to acquire the Subject Easements by contract. (Doc. 8, ¶ 13).

**B. Conclusions of Law**

8. A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

9. Congress enacted the NGA to regulate the interstate transportation and sale of natural gas for resale to the public for domestic, commercial, industrial or any other use. As such, the NGA governs the Project. The pertinent section of the NGA provides as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located. . . Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h) (2016).[1]

10. The NGA authorizes a party to exercise the federal power of eminent domain to acquire property necessary for an interstate natural gas pipeline project when: (1) the plaintiff holds a FERC Certificate authorizing a project; (2) FERC has determined that the property is necessary for the project; and (3) the plaintiff is unable to acquire the property by contract. Transcontinental Gas Pipe Line Co., LLC v. 6.04 Acres of Land, 910 F.3d 1130, 1154 (11th Cir. 2018); see also Sabal Trail Trans., LLC v. 9.669 Acres of Land

---

[1] FGT offered to purchase the Subject Easements from known owners for at least $3,000 and the known owners rejected such offers, supporting the inference that the owners claim the Subject Easements to be worth more than $3,000.

4

in Polk County, Fla., No. 8:16-cv-640-T-33AEP, 2016 WL 2745082, at *3 (M.D. Fla. May 11, 2016) (citing Columbia Gas Trans., LLC v. 1.01 Acres, More or Less, in Penn Twp., York City, Pa., 768 F.3d 300, 304 (3d Cir. 2014)).

11. The undisputed record establishes that FGT has satisfied each condition precedent necessary to condemn the Subject Easements under the pertinent section of the NGA: (1) FGT holds a FERC Certificate authorizing the Project; (2) FERC has determined that the Subject Easements are necessary for the Project; and (3) FGT has been unable to acquire the Subject Easements by contract.

12. District courts have limited jurisdiction in NGA condemnation actions. "[T]he role of the district court in Natural Gas Act eminent domain cases extends solely to examining the scope of the certificate and ordering the condemnation of property as authorized in that certificate." Columbia Gas Trans. Corp. v. An Easement to Construct, Operate & Maintain a 24-Inch Pipeline, No. 5:07CV04009, 2008 WL 2439889, at *2 (W.D. Va. June 9, 2008). The condemnation action "does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement." Sabal Trail, 2016 WL 2745082, at *3 (quoting Williams Natural Gas Co. v. City of Oklahoma City, 890 F.2d 255, 264 (10th Cir. 1989), cert.

denied, 497 U.S. 1003 (1990)).[2]

> "The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope." Steckman Ridge GP, LLC, v. An Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp., et al., Nos. 08-168, et al., 2008 WL 4346405, at *3 (W.D. Pa. Sept. 19, 2008) (citations omitted).

Sabal Trail, 2016 WL 2745082, at *3.

13. Thus, this Court finds that the NGA authorizes FGT to exercise the power of eminent domain. FGT has the right to condemn the Subject Easements identified in the Complaint (Doc. 1-3) and the Notice of Condemnation (Doc. 2-1). The Subject Easements are described in Exhibit A to this Order.

### III. Preliminary Injunction and Possession

#### A. Findings of Fact

14. FGT also requests that the Court issue a preliminary injunction granting it immediate possession of the Subject Easements in order to begin pre-construction and construction activities.

15. The FERC Certificate authorizes the construction and operation of the Project on its specified terms and conditions. (Doc. 1-5, ¶ 36(B)). FERC

---

[2] As the Eleventh Circuit stated in Transcontinental Gas, to defeat the "right to condemn property that was depicted on FERC-approved alignment sheets," "Defendants would have had to make its [sic] challenge to FERC's chosen right-of-way before FERC in the first instance, subject to review by this Court or the D.C. Circuit on a party's petition for review." 910 F.3d at 1156.

found that the "…Putnam Expansion Project will not adversely affect FGT's existing customers as the project is designed to provide the new service while maintaining existing services. Further, there will be no adverse impact on other pipelines in the region or their captive customers; the proposal is designed to meet the new incremental demand from Seminole Electric and is not designed to replace existing service on other pipelines." (Doc. 1-5, ¶ 13).

16. The purpose of the Project is to provide additional supplies of natural gas to Seminole Electric for its new gas-fired, combined-cycle generating unit and its power generation needs. Upon completion, the Project will enable FGT to transport 169,000 dekatherms of natural gas per day for Seminole Electric to the new FGT/SeaCoast Gas Transmission, LLC (SeaCoast) delivery point in Putnam County. (Id., ¶ 5).

17. In connection with the Project, on April 5, 2018, FGT and Seminole Electric entered into a Precedent Agreement whereby FGT has agreed to provide 169,000 dekatherms per day of firm transportation service for Seminole Electric to the new FGT/SeaCoast Gas Transmission, LLC delivery point in Putnam County. FGT and Seminole Electric have agreed to an in-service date of April 1, 2022. (Id., ¶ 5).

18. For the Project, FGT will be (i) constructing approximately 13.7 miles of 30-inch diameter pipeline loop (the "West Loop") from approximately Mile Post ("MP") 521.3 in Columbia County to approximately MP 535.0 in

Union County, which will parallel FGT's existing 30-inch and 24-inch diameter mainlines; (ii) constructing approximately 7.0 miles of 30-inch diameter pipeline loop (the "East Loop") from approximately MP 574.8 in Clay County to approximately MP 581.8 in Putnam County, paralleling FGT's existing 26-inch and 24-inch diameter mainlines; (iii) relocating two pig receiver stations, one from Columbia County to Union County and the other from Clay County to Putnam County; and (iv) modifying existing Compressor Station 18 in Orange County, Florida to allow for one unit at the station to have bi-directional gas flow capability into the existing mainline. (Doc. 6, ¶ 11; Doc. 7, ¶ 11).

19. The nature of the Project requires extensive construction along several segments of the Project in a specified order. (Id., ¶¶ 14-15). A delay in the acquisition of the easements for one property will delay the entire project as a result of the linear construction method used for pipeline construction, and will result in significant unrecoverable costs to FGT. (Id. ¶¶ 21-23). The process is comparable to an assembly line, with specialized teams following each other down the right of way, successively performing tasks such as staking and fencing, clearing and grading, pipe stringing, welding, trenching, lowering-in and backfilling, hydrostatic testing, clean-up and restoration, and commissioning. (Id. ¶ 15).

20. On February 2, 2021, FERC issued the Notice to Proceed with Construction for the Putnam Expansion Project, authorizing FGT to begin construction activities. (Id., ¶ 10, Exh. C).

21. FGT must begin pre-construction activities as soon as possible. This Project requires a complex and coordinated construction process, with work activities being performed in sequential phases. To mitigate construction risks that threaten FGT's ability to meet the in-service date of April 1, 2022 (including, but not limited to, potential construction risks associated with installation methods, possible unexpected groundwater conditions, weather delays, and force majeure events such as tropical storms and hurricanes), FGT needs to begin construction on the Project in Clay, Columbia, Putnam, and Union Counties by August 1, 2021. (Id., ¶ 13-14).

22. FGT must take immediate possession to perform pre-construction activities in order to start construction on August 1, 2021, and to meet the in-service date of April 1, 2022. To timely commence and complete the Project, it is critical that FGT provide its contractors with immediate access to all properties within the spread. Construction has been planned so that there will not be conflicting activities occurring at any location along the FERC-authorized route. Thus, FGT's inability to enter even a single parcel as soon as possible could have a domino effect and delay completion of the entire Project. (Id., ¶ 19). In addition to the pre-construction activities, FGT's

contractors need access to the authorized construction areas to mobilize equipment and resources in order to begin the construction and installation activities by August 1, 2021. (Id., ¶ 20).

23. If FGT's contractors cannot begin construction by August 1, 2021, the unrecoverable delay costs that FGT will incur on a daily basis are significant, and the cumulative effect could be exorbitant. (Id., ¶ 21). Specifically, if construction of the pipeline facilities in Florida is delayed just one week beyond August 1, 2021, FGT would incur $1,896,000.00 in delay costs per week. (Id.).

24. Once construction begins, FGT will be liable to its contractor for any delays that occur if a contractor cannot access a property in sequential order. Neither delaying the start of the Project nor halting construction upon reaching an unresolved parcel are tenable options, as either event would delay completion of the Project indefinitely, and involve significant costs as detailed in the Declaration of Adam Broad and the Declaration of Diego Aponte. (Id., ¶¶ 21-23). The "move around" option would disrupt the efficient, linear workflow previously described and delay completion of the Project for at least as long as it takes to acquire the necessary easement interests. Moreover, each such "move around" is costly. (Id., ¶ 23). In that event, FGT will incur delay costs that are estimated to range between $20,000.00 and $316,000.00 per day. (Id., ¶ 22).

25. If FGT is delayed in its construction of the Project and is unable to meet the in-service date, FGT will suffer damage to its reputation and business goodwill that cannot be reasonably calculated. (Id. at ¶ 24).

**B.      Conclusions of Law**

26. It is well established that granting immediate possession of property through a preliminary injunction is appropriate where a pipeline company holds a valid FERC Certificate, a court has entered an order establishing the pipeline company's right to condemn the necessary easements, and the pipeline company has satisfied the standard for injunctive relief. See, e.g., Transcon. Gas Pipe Line, 910 F.3d at 1153; E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004) ("Sage"), cert. denied, 543 U.S. 978 (2004); Alliance Pipeline, LP, v. 4.360 Acres, 746 F.3d 362, 368-69 (8th Cir. 2014), cert. denied, 135 S. Ct. 245 (2014); Columbia Gas Trans., 768 F.3d at 315-16.

27. In the Eleventh Circuit, as in other circuits, a party satisfies the standard for injunctive relief and is "entitled to a preliminary injunction if it show[s]: '(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest.'" Jysk Bed'N Linen v. Dutta-Roy, 810 F.3d 767, 774 (11th Cir. 2015) (citations omitted).

28. By granting FGT's Motion for Partial Summary Judgment as to these Defendants, this Court has determined FGT has the right to condemn the Subject Easements. Accordingly, there is a substantial likelihood that FGT will prevail on the merits.

29. FGT will suffer irreparable injury if the requested preliminary injunction is not granted. Economic harm is considered irreparable where, as here, there is no adequate remedy at law to recover damages for the harm suffered. Transcon. Gas, 910 F.3d at 1165–66. The Eleventh Circuit has found such irreparable harm based on the declarations of pipeline representatives attesting that the pipeline company would incur unrecoverable costs for each day that construction was delayed, as well as harm to its reputation and business goodwill. Id. at 1163–66.

30. Any delay in granting FGT possession of the Subject Easements will impede its ability to provide the needed energy delivery services that FERC has already conclusively determined to be in the best interest of the public.

31. The irreparable injury at stake for FGT outweighs any damage the proposed injunction may cause these Defendants, which damage is entirely reparable by the payment of compensation. The right to compensation under the NGA is not harmed by immediate possession of the Subject Easements, and "[t]he damages that a preliminary injunction would cause [these]

Defendants, on the other hand, comes down only to any damages that might result from a defendant losing possession of the property in question sooner, rather than later, after compensation for the taking has been finally determined." Transcon. Gas, 910 F.3d at 1166. The Defendants are guaranteed the right to just compensation for the condemned property interests, and any damages suffered based on the timing of the taking are "capable of determination at the compensation stage of the litigation." Id. Weighing the balance of harms supports an award of preliminary relief, where, as in Transcontinental Gas, the harm to FGT outweighs the harm to these Defendants from FGT "accessing their properties sooner rather than later, especially because Defendants should be able to recover all recoverable damages in full at the compensation stage of the litigation, while [FGT's] damages would be irrecoverable." Id. The relief that FGT seeks in the form of immediate possession will not harm Defendants' right to compensation. Any such damages must and will be remedied with money. Upon the grant of injunctive relief, there will remain the proceeding to determine just compensation.

32.     Granting FGT immediate possession of the Subject Easements to construct the Project in a timely manner would serve the public interest. This conclusion is supported by the NGA and the FERC Certificate. "Congress passed the Natural Gas Act and gave gas companies condemnation power to

ensure that consumers would have access to an adequate supply of natural gas at reasonable prices." Sage, 361 F.3d at 830. Congress did so because supplying natural gas for the generation of electricity and other energy needs advances the public interest. Id. (finding pipeline project served public interest because it would make gas available to consumers and electric power plants, as well as help local communities to attract new business). This Court, along with other federal courts in the Eleventh Circuit, have held that supplying natural gas to generate electricity and to fulfill other energy needs is in the best interest of the public. Indeed, in affirming the award of a preliminary injunction in a pipeline condemnation case, the Eleventh Circuit noted that "[a]ny delays in construction would delay the realization of these public benefits." Transcon. Gas, 910 F.3d at 1167 & n.21; see also, e.g., Sabal Trail Transmission, LLC v. +/– 0.4 Acres of Land in Marion County Florida, 5:16-cv-210-Oc-30PRL, 2016 WL 2997672, at *5 (M.D. Fla. May 25, 2016) (stating that "supplying natural gas for the generation of electricity and other energy needs advances the public interest"); Sabal Trail Transmission, LLC v. Estate, 1:16-cv-100, 2016 WL 8919397, at *8 (N.D. Fla. May 23, 2016) (same).

33. Here, FERC determined that the "…Putnam Expansion Project will not adversely affect FGT's existing customers as the project is designed to provide the new service while maintaining existing services. Moreover, there will be no adverse impact on other pipelines in the region or their captive

14

customers; the proposal is designed to meet the new incremental demand from Seminole Electric and is not designed to replace existing service on other pipelines." (Doc. 1-5, ¶ 13).

34. Supplying natural gas for the generation of electricity and other energy needs advances the public interest. Sage, 361 F.3d at 830 (finding pipeline project served public interest because it would make gas available to consumers and electric power plants, as well as help local communities to attract new business); E. Tenn. Nat. Gas, 2006 WL 1133874, at *14 ("[T]here is a substantial public interest at stake in this case – the need to capture and supply as much natural gas to the market as soon as possible."). The Florida Gas Putnam Expansion Project allows FGT to expand its system to deliver 169,000 dekatherms per day of firm transportation service for Seminole Electric's new gas-fired, combined-cycle generating unit, which will replace and retire an existing coal-fired generating unit. (Doc. 1-5, ¶ 5).

35. To satisfy the requirement under Rule 65(c) of the Federal Rules of Civil Procedure that a movant give security upon issuance of a preliminary injunction, FGT proposes to deposit into the Court Registry twice the appraised value of the parcel.[3] This Court finds such security to be sufficient. See Transcon. Gas, 910 F.3d at 1174 (finding that a security bond equal to twice

---

[3] This appraised value has been reached by Florida Gas's expert(s) and has not been tested. It is subject to challenge at the valuation phase of the proceeding.

the appraised value of the easements was adequate security under Rule 65(c)); Sage, 361 F.3d at 824 (observing the financial strength of the gas company and its parent corporation would enable payment if the security fell short).

36. In consideration of the foregoing factors, this Court finds that FGT's request for a preliminary injunction as to these Defendants should be granted. The Court conditions the entry of preliminary injunction on FGT making a cash deposit into the Registry of the Court in the amount of **$2,400**, which is twice FGT's most recent appraisal of the compensation owed for **FLMED-PUTN-007.00.** The cash deposit will "blunt" or negate any potential claim of irreparable harm to Defendants. Sage, 361 F.3d at 829.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 4) is **GRANTED**, and FGT has the right to condemn the Subject Easements.

2. Plaintiff's Motion for Preliminary Injunction and Immediate Possession (Doc. 5) is **GRANTED**.

3. Upon FGT's deposit of $2,400 into the Registry of the Court, the following shall occur:

    a. FGT shall have immediate access to, and possession of, the Subject Easements described in Exhibit A to this Order; and

    b. FGT may immediately begin pre-installation activities so

that construction-related activities can commence by August 1, 2021, for the purposes of constructing the Project.

4. All pre-installation and construction-related activities must be consistent with the FERC Certificate and all other applicable regulatory permits.

**DONE** and **ORDERED** in Jacksonville, Florida, this 1st day of July 2021.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Copies furnished to:
Counsel/Parties of Record